**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER NICKELSON, et al., ) | | Case No. CV 14-3654 (AJW) |
| ) | | |
| **Plaintiffs,** ) | | |
| ) | | **ORDER REGARDING DEFENDANT'S** |
| **v.** ) | | **MOTION TO DISMISS, OR** |
| ) | | **ALTERNATIVELY, FOR SUMMARY** |
| UNITED STATES OF AMERICA, ) | | **JUDGMENT** |
| ) | | |
| **Defendant.** ) | | |
| _____ ) | | |

Defendant seeks dismissal or summary judgment, arguing that the complaint is barred by the statute of limitation. Plaintiffs concede that the complaint is technically untimely, but contend that their tardiness should be excused by equitable tolling, equitable estoppel, or both.

Because both parties ask the court to consider facts outside the pleadings, the court treats the motion as a motion for summary judgment. See Fed. R. Civ. P. 56. The standards governing the court's resolution of such motions are familiar, so there is no need to recite them here. Neither party contends that additional factual development is needed before the motion may be decided.

The parties largely agree about the material facts. Defendant has proffered purported undisputed material facts 1-14. Plaintiffs agree that all but fact 3 are undisputed, so the court adopts facts 1, 2, and 4-14. Plaintiffs object to the last phrase of fact 3 as a "legal conclusion of disputed validity." [Plaintiffs' Statement of Genuine Issues at 3]. Because plaintiffs chose not to pursue their appeal of the Nevada District Court's ruling, because plaintiffs do not here contend that the Nevada District Court's ruling was erroneous, and because plaintiffs have proffered no evidence that fact 3 is untrue, plaintiffs' objection to fact 3 is overruled and the court adopts all of fact 3. [See Opposition at 8 ("Plaintiffs intend no collateral attack on the Nevada District Court's finding that the certificate of merit requirement applies in medical malpractice FTCA cases filed in Nevada District Court...."); Declaration of Beth Maxwell Stratton, Exhibits I & J].

Plaintiffs have proffered purported undisputed material facts 15-31. Defendant agrees that facts 16, 18, 19 are undisputed [Defendant's Reply Statement of Uncontroverted Facts at 6-7], so the court adopts them. Defendant, however, disputes, or objects to, the remainder. Defendant's objections to the form or relevance of facts 15, 21-25, and 27-31 are overruled. The court will consider them to the extent that they are relevant. Defendant also disputes fact 17, but does so in an unclear and insubstantial manner, so any purported dispute is not genuine, and fact 17 is adopted. Defendant also disputes fact 20. The disagreement about fact 20 is immaterial, so, giving plaintiffs the benefit of any doubt, the court adopts fact 20 for purposes of this motion. Defendant indicates that it does not dispute the first clause of fact 26, but says nothing about the

remainder.  Since defendant apparently does not dispute the
remainder, the court adopts all of fact 26.

Therefore, the court adopts facts 1-31, although only a few of
them actually matter.  That is the factual record on which this
motion is decided.

The six month limitation period on the filing of plaintiffs'
claims in court began to run on June 17, 2013. [Fact 1; Opposition
at 3]. Plaintiffs filed the Nevada case on September 12, 2013.
[Facts 2, 15; Opposition at 2]. Defendant had until December 4, 2013
to respond to the complaint in the Nevada case. [Fact 17].
Defendant's counsel asked plaintiff's counsel for additional time to
respond to the complaint. [Fact 17].  Plaintiffs' counsel granted
the request, and agreed to extend that deadline by 30 days, to
January 3, 2014. [Facts 17-18]. The six month limitation period
expired during the extension. [Fact 19]. Defendant filed a motion to
dismiss the Nevada case on January 3, 2014. [Fact 21]. The Nevada
case was dismissed on May 6, 2014. [Fact 5]. Plaintiffs filed this
case on May 13, 2014. [Fact 8].

State law governs all substantive aspects of Federal Tort
Claims Act ("FTCA") cases.  See United States v. Olson, 546 U.S. 43,
44 (2005)("The Federal Tort Claims Act ... authorizes private tort
actions against the United States 'under circumstances where the
United States, if a private person, would be liable to the claimant
in accordance with the law of the place where the act or omission
occurred.'")(quoting 28 U.S.C. § 1346(b)(1)). By contrast, federal
law governs all aspects of the FTCA's statute of limitation,
including tolling. See United States v. Park Place Associates, Ltd.,
563 F.3d 907, 922 (9th Cir. 2009) ("We have long recognized that

1  '[a] court must look to state law for the purpose of defining the

2  actionable wrong for which the United States shall be liable, but to

3  federal law for the limitations of time within which the action must

4  be brought.'") (quoting Poindexter v. United States, 647 F.2d 34, 36

5  (9th Cir. 1981)).

6      Under federal law, a limitation period is not tolled during the

7  time when a previous case, which was subsequently dismissed, was

8  pending.  See, e.g., O'Donnell v. Vencor Inc., 466 F.3d 1104, 1111

9  (9th Cir. 2006)("In instances where a complaint is timely filed and

10 later dismissed, the timely filing of the complaint does not 'toll'

11 or suspend the 90-day limitation period.  In such cases, dismissal

12 of the original suit, even though labeled as without prejudice,

13 nevertheless may sound the death knell for the plaintiff's

14 underlying cause of action if the sheer passage of time precludes

15 the prosecution of a new action.") (internal citations and quotation

16 marks omitted); Elmore v. Henderson, 227 F.3d 1009, 1011 (7th Cir.

17 2000)(Posner, J.)("[A] suit dismissed without prejudice is treated

18 for statute of limitations purposes as if it had never been

19 filed.").  Nor does a complaint in a subsequent case relate back to

20 a complaint filed in a previously dismissed case.  See O'Donnell,

21 466 F.3d at 1111 (noting that the plaintiff's "second complaint does

22 not 'relate back' to her first complaint because her separate

23 complaint was not an 'amendment' to her complaint, but rather a

24 separate filing")(citing Fed. R. Civ. P. 15(c)(2)).

25     Because the six month limitation period for filing the

26 complaint after administrative denial of the claim expired on

27 December 14, 2013, and because plaintiffs did not file this case

28 until May 13, 2014, plaintiffs failed to satisfy at least one of the

1  two independent filing deadlines applicable to their claims.  <u>See</u>
2  <u>Dyniewicz v. United States</u>, 742 F.2d 484, 485 (9th Cir. 1984)
3  ("Section 2401(b) [of 28 U.S.C.] establishes two ... hurdles, both
4  of which must be met.  A claim must be filed with the agency within
5  two years of the claim's accural, and the claimant must file suit
6  within six months of the administrative denial of the claim.  If
7  either requirement is not met, suit will be time barred.")(citations
8  omitted).  Therefore, unless the limitation period was tolled, this
9  case is time barred.
10      The FTCA's statute of limitation may be equitably tolled.
11  <u>United States v. Kwai Fun Wong</u>, __ U.S. __, 135 S.Ct. 1625, 1632-
12  1633 (2015). "[A] plaintiff is entitled to equitable tolling only if
13  he shows '(1) that he has been pursuing his rights diligently, and
14  (2) that some extraordinary circumstance stood in his way, and
15  prevented timely filing."  <u>Holland v. Florida</u>, 560 U.S. 631, 649
16  (2010) (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005));
17  <u>accord</u> <u>Menominee Indian Tribe of Wisconsin v. United States</u>, __
18  U.S.__, 136 S.Ct. 750, 755 (2016).  Both elements must be satisfied.
19  <u>Menominee Indian Tribe of Wisconsin</u>, 136 S.Ct. at 756. "'[A] garden
20  variety claim of excusable neglect', such as a simple
21  'miscalculation' that leads a lawyer to miss a filing deadline, does
22  not warrant equitable tolling."  <u>Holland</u>, 560 U.S. at 651-652
23  (quoting <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 96 (1990)
24  and <u>Lawrence v. Florida</u>, 549 U.S. 327, 336 (2007)); <u>see</u> <u>Menominee</u>
25  <u>Indian Tribe of Wisconsin</u>, 136 S.Ct. at 756-757 (holding that a
26  lawyer's mistake of law was "fundamentally not different than 'a
27  garden variety claim of excusable neglect'") (quoting <u>Irwin</u>, 498

28

1  U.S. at 96).[1]

2      No basis for equitable tolling exists.  Nothing prevented

3  plaintiffs from filing their complaint within the deadline. In fact,

4  they did so, and they filed it the correct forum. The problem is

5  that plaintiffs' counsel made a mistake. He neglected to file with

6  the complaint an affidavit of merit from a medical expert that the

7  Nevada District Court found was required by Nev. Rev. Stat. §

8  41A.071. See Nickelson v. United States, 2014 WL 1814281, at *1 (D.

9  Nev. May 7, 2014). Under Nevada law, the complaint was fatally

10  defective and subject to dismissal without leave to amend.  Swails

11  v. United States, 406 Fed. App'x 124, 125-126 (9th Cir. 2010)

12  (affirming dismissal of an FTCA case because "[t]he Nevada Supreme

13  Court has held that a medical malpractice complaint filed without

14  the supporting affidavit is 'void ab initio, meaning it is of no

15  force and effect.' Such a complaint 'does not exist and cannot be

16  amended.'")(quoting Washoe Med. Ctr. v. Second Judicial Dist. Ct.,

17  _____

18  [1]    Although the Supreme Court apparently has left open the
19  question whether a different test for equitable tolling should
   apply outside the context of habeas corpus, see Menominee Indian
20  Tribe of Wisconsin, 136 S.Ct. at 4 n. 2, it has provided no hint
   concerning what such a different test might consist of. Indeed, the
21  Supreme Court has typically assumed that the Holland-Pace
   formulation of equitable tolling applies, regardless of context.
22  See, e.g., Lozano v. Montoya Alvarez, __ U.S. __, 134 S.Ct. 1224,
   1231-1232 (2014)("As a general matter, equitable tolling pauses the
23  running of, or 'tolls', a statute of limitations when a litigant
   has pursued his rights diligently but some extraordinary
24  circumstance prevents him from bringing timely action.  See, e.g.,
   Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)."). It seems unlikely
25  that a different test for equitable tolling applicable to non-
26  prisoners represented by counsel, such as plaintiffs, would be more
   forgiving than the test applicable to habeas corpus petitioners who
27  are typically poorly educated, unrepresented, and in custody. For
   these reasons, the court applies the Holland-Pace test in this
28  case.

148 P.3d 790, 794 (Nev. 2006)); see, e.g., Heinrich v. United

States, 2016 WL 1714260, at * 3 (D. Nev. Mar. 28, 2016)(following

Swails and dismissing a pro se litigant's complaint for failure to

comply with § 41A.071's affidavit of merit requirement); Poppe v.

United States, 2015 WL 5638229, at *3-4 (D. Nev. Sept. 23, 2015)

(noting that a pro se plaintiff's attempt to thwart dismissal of an

FTCA case by filing an amended complaint including an affidavit of

merit had been rejected, and dismissing a refiled FTCA case as

untimely), appeal pending 9th Cir. No. 15-17132; Lawes v. Las Vegas

Metro. Police Dep't, 2013 WL 3433150, at *1-2 (D. Nev. July 8,

2013)(same, where the plaintiff was represented by counsel rather

than proceeding pro se).

The mistake made by plaintiffs' counsel was a "garden variety"

error, not something extraordinary, unethical, or tantamount to

abandonment. See Menominee Indian Tribe of Wisconsin, 136 S.Ct. at

756-757 (holding that the mistaken failure to satisfy a prerequisite

to filing suit – specifically, the requirement that a claim be

administratively exhausted – was "a garden variety claim of

excusable neglect" rather than an extraordinary circumstance beyond

the plaintiff's control, and therefore did not warrant equitable

tolling) (quoting Irwin, 498 U.S. at 96). Accordingly, it is the

sort of mistake for which plaintiffs – who freely chose their own

attorney – must bear the consequences. See Irwin, 493 U.S. at 92

("Under our system of representative litigation, 'each party is

deemed bound by the acts of his lawyer-agent.'")(quoting Link v.

Wabash R. Co., 370 U.S. 626, 634 (1962)); Holland, 560 U.S. at 655-

660 (Alito, J., concurring)(explaining that equitable tolling is not

warranted by attorney negligence, but is warranted "if the missed

deadline results from attorney misconduct that is not constructively attributable to plaintiff, such as abandonment", and adding that: "Common sense dictates that a litigant cannot be held constructively responsible for the conduct of a lawyer who is not operating as his agent in any meaningful sense of that word.") (quoted with approval in Maples v. Thomas, __ U.S. __, 132 S. Ct. 912, 923 (2012)); Foley v. Biter, 793 F.3d 998, 1002 (9th Cir. 2015)(statig that "a petitioner may be excused for the consequences of his attorney's conduct when that conduct essentially severs the principal agent relationship").

Although Irwin arguably suggested that equitable tolling might be warranted in circumstances like those presented in this case when it said that "[w]e have allowed equitable tolling in situations the claimant has actually pursued his judicial remedies by filing a defective pleading during the statutory period," Irwin, 489 U.S. at 96, that approach cannot be squared with the test for equitable tolling articulated in Holland and Pace.  Moreover, in Irwin the court acknowledged that "the principles of equitable tolling do not extend to what is at best a garden variety claim of excusable neglect" such as occurred in this case.  Irwin, 498 U.S. at 96. There is no principled basis for distinguishing between garden variety neglect concerning the statute of limitation that results in untimely filing and garden variety neglect that causes dismissal on a procedural ground and that results in untimely filing.  Further, both Burnett v. New York Central R.R. Co., 380 U.S. 424 (1965) and Herb v. Pitcairn, 325 U.S. 77 (1945), the cases which Irwin cited for the principle concerning the filing of a defective pleading quoted above, held that the timely filing of a complaint in the

wrong court warranted equitable tolling in a suit against a private railroad under the Federal Employers' Liability Act. Here, by contrast, plaintiffs filed suit in the *correct* court against the United States pursuant to a statutory waiver of sovereign immunity, a less appealing context for applying equitable tolling. <u>Irwin</u>, 498 U.S. at 458 ("Because the time limits imposed by Congress in a suit against the Government involve a waiver of sovereign immunity, it is evident that no more favorable tolling doctrine may be employed against the Government than is employed in suits between private litigants.").

The elements of equitable estoppel are: "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance." <u>Bolt v. United States</u>, 944 F.2d 603, 609 (9th Cir. 1991); <u>see</u> <u>Glus v. Brooklyn Eastern Dist. Terminal</u>, 359 U.S. 231, 233-234 (1959). Not just any detrimental reliance will do. To satisfy the fourth element of estoppel, the detrimental reliance must be *reasonable*. <u>See</u> <u>Huseman v. Icicle Seafoods, Inc.</u>, 471 F.3d 1116, 1122 (9th Cir. 2006) (noting that equitable estoppel requires both "actual and reasonable reliance"). Morever, "equitable estoppel will not lie against the government as it lies against private litigants." <u>Office of Personnel Mgmt. v. Richmond</u>, 496 U.S. 414, 419 (1990). Assuming that equitable estoppel is available against the government in FTCA cases, "[t]he party claiming estoppel must show both (1) 'affirmative misconduct' on the part of the government and (2) that the government's wrongful act will cause a serious injustice and the public's interest will not suffer undue damage."

1   <u>Industrial Customers of Nw. Utils. v. Bonneville Power Admin.</u>, 767
2   F.3d 912, 928 (9th Cir. 2014); <u>accord</u> <u>Estate of Amaro v. City of</u>
3   <u>Oakland</u>, 653 F.3d 808, 813 (9th Cir. 2011)("Additionally, when
4   estoppel is sought against the government, there must be affirmative
5   misconduct (not mere negligence) and a serious injustice outweighing
6   the damage to the public interest of estopping the government.").
7   Affirmative misconduct is "a deliberate lie ... or a pattern of
8   false promises." <u>Mukherjee v. I.N.S.</u>, 793 F.2d 1006, 1009 (9th Cir.
9   1986).

10       No basis for equitable estoppel exists. First, there was no
11  affirmative misconduct by defendant's counsel. Defendant's counsel
12  did not lie or make plaintiffs' counsel any promises that were not
13  kept. Defendant's counsel never agreed not to file a motion to
14  dismiss or waived the right to raise a limitation of actions
15  defense.[2]  There was no express or implied representation or
16  assurance by defendant's counsel that plaintiffs' complaint was
17  timely or legally sufficient.

18       Second, any reliance by plaintiffs' counsel on anything that
19  defendant's counsel did or failed to do, or said or failed to say,
20  was unreasonable. Defendant's counsel had no *material* facts that
21  were not equally available to plaintiffs' counsel. The defect in the
22  complaint that plaintiffs' counsel had prepared and filed was
23  patent, and defendant's counsel did nothing to attempt to conceal

24
_____
25  [2]  Indeed, the written stipulation granting the extension indicates
26  that the government is provided the extra time to "respond" to the
    complaint, not merely to "answer" the complaint. [Declaration of
27  Jason M. Caruso, Exhibit 1].  Therefore, the possibility that the
    government might file a motion rather than an answer was left open
28  by the parties.

it.  The flaw in the complaint, and the complaint's consequent vulnerability to dismissal, were either known to plaintiffs' counsel or could easily have been discovered by plaintiffs' counsel, who drafted it. Similarly, the legal authorities on which the Nevada District Court relied in dismissing the Nevada case were publicly available.

Third, defendant's counsel was not in a fiduciary or other special relationship with plaintiffs or plaintiffs' counsel and owed plaintiffs and plaintiffs' counsel no duty to affirmatively disclose either the existence of the defect in the complaint or the potential consequences of that defect, even assuming (which has not been demonstrated, and which defendant's counsel denies [see Declaration of Holly Vance at paras. 4-5]) that defendant's counsel was aware of the defect when she sought the extension. See Lehman v. United States, 154 F.3d 1010, 1017 (9th Cir. 1998) ("[A]n omission to give advice is insufficient conduct to support equitable estoppel against the government."), cert. denied, 526 U.S. 1040 (1999); Cadwalder v. United States, 45 F.3d 297, 299-300 (9th Cir. 1995)(holding that inaction, in the form of the government's failure to inform the plaintiffs that their claim was legally insufficient, did not support equitable estoppel). Similarly, defendant's counsel was not obliged either to forgo seeking an extension of time to respond to the complaint or to file a motion to dismiss more promptly than defendant did. Further, once plaintiffs' predicament became evident, defendant's counsel was under no obligation to stipulate to the filing of an amended complaint, to waive defendant's statute of limitation defense, or to take other affirmative steps to rescue plaintiffs from their unfortunate situation.

Plaintiffs apparently contend that defendant's counsel had a duty to inform plaintiffs' counsel that she had not reviewed the complaint, and that by saying that she needed to "confer with witnesses" [Declaration of Jason M. Caruso, para. 6], she implicitly represented that she had read the complaint. [Opposition at 10]. If this is plaintiffs' contention, it is unavailing.  First, there is no evidence that plaintiffs' counsel asked defendant's counsel whether she had read the complaint. Second, plaintiffs cite no authority for the proposition that defendant's counsel owed plaintiffs or plaintiffs' counsel an affirmative duty to disclose whether she had read the complaint.  Third, by stating that she needed an extension of time to respond to the complaint so that she could, among other things, "confer with witnesses" – *if* that indeed is what she said – defendant's counsel was not implicitly representing that she had read the complaint. An attorney might reasonably anticipate the possible need to "confer with witnesses" before responding to a complaint even if he or she has not yet reviewed the complaint. Fourth, there is no evidence that defendant's counsel did not "confer with witnesses" (or at least discuss the case with agency personnel, which might amount to the same thing), or did not initially intend to "confer with witnesses," but later decide (after eventually getting around to reviewing the complaint) that conferring with witnesses would not be necessary after all.  Fifth, plaintiffs' counsel offers no plausible reason why he would have granted defendant the requested extension if defendant's counsel had read the complaint, but would not have granted it if she had not.  Sixth, even if plaintiff's counsel had refused the requested extension, defendant likely could have

1    obtained it from the court. Finally, by asserting that defendant's

2    counsel had not read the complaint [Opposition at 10], plaintiffs

3    have jettisoned any contention that – at the time that defendant's

4    counsel sought the extension – defendant's counsel was aware that

5    the complaint was defective or that the requested extension would

6    likely result in its dismissal. If, as plaintiffs' argue,

7    defendant's counsel had not read the complaint before she requested

8    an extension to respond to it, then she could not possibly have

9    known about the mistake made by plaintiffs' counsel – and its

10   potential consequences – when she sought that extension.

11        Accordingly, whether defendant's counsel had reviewed the

12   complaint, or whether defendant's counsel described defendant's

13   reason for seeking an extension in the words attributed to her by

14   plaintiffs' counsel, does not matter.  Any private subjective

15   expectations of plaintiffs' counsel regarding possible future

16   reciprocity with respect to professional courtesy under various

17   hypothetical scenarios are equally beside the point. The affirmative

18   misconduct necessary to equitably estop the government is absent, as

19   are the basic elements of ignorance of the facts and reasonable

20   detrimental reliance.

21        This result is in some respects regrettable.  Our justice

22   system reflects a preference for resolution of cases – whether

23   meritorious or unmeritorious – on their substantive merits.  See

24   Tyler T. Ochoa & Andrew J. Wistrich, The Puzzling Purposes of

25   Statutes of Limitation, 28 Pac. L.J. 453, 500-503 (1997). In

26   addition, the core purposes of the statute of limitation probably

27   were satisfied in this case because plaintiffs had presented their

28   claim to defendant administratively in a timely manner, subsequently

1  filed the Nevada case within the deadline, and later refiled their

2  lawsuit in this court without delay, so that defendant was promptly

3  placed on notice of their claims.  See Andrew J. Wistrich,

4  Procrastination, Deadlines, and Statutes of Limitation, 50 Wm. &

5  Mary L. Rev. 607, 616-617 (2008); see generally Ochoa & Wistrich, 28

6  Pac. L.J. at 460-500. Recognizing the potential for unfairness, some

7  states have enacted exceptions to the statute of limitation to

8  preserve claims in situations such like this one.  See,

9  e.g., Allaway v. McGinnis, 362 F.Supp. 2d 390, 393-394 (W.D.N.Y.

10  2005)(applying New York law).  Congress, however, has not seen fit

11  to enact such legislation, and the federal courts evidently have not

12  created an analogous tolling doctrine as a matter of common law.  To

13  do so in the FTCA context – which arguably would expand by common

14  law the scope of a statutory waiver of sovereign immunity – would be

15  problematic. It is noteworthy that Congress created exceptions to

16  the FTCA statute of limitation for other types of procedural

17  defects, see 28 U.S.C. § 2679(d)(5), but not for this one.

18       For the foregoing reasons, the untimeliness of the complaint is

19  not overcome by either equitable tolling or equitable estoppel.

20  Therefore, defendant's motion for summary judgment is **granted.**

21  **IT IS SO ORDERED.**

22

23  Dated: November 2, 2016

24  _____
    Andrew J. Wistrich
25  United States Magistrate Judge

26

27

28

14